# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 442 | **DATE** | 1/12/2004 |
| **CASE TITLE** | Dale Fisher vs. Roger Cowan | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Petition for Writ of Habeas Corpus

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Before the court is Dale Fisher's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. For the reasons stated on the attached Opinion and Order, Fisher's petition is denied. (See attached Opinion and Order.)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JAN 1 4 2004 date docketed | |
| ✓ | Docketing to mail notices. | | 17 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ex rel. )
DALE FISHER, )
)
      Petitioner, ) No. 01 C 0442
)
v. ) Honorable Charles R. Norgle
)
ROGER COWAN, )
)
      Respondent. )

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge.

Before the court is Petitioner Dale Fisher's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. For the following reasons, Fisher's petition is denied.

**I. BACKGROUND**

On February 25, 1998, following a bench trial in the Circuit Court of Cook County, Illinois, Dale Fisher was convicted of possession of a controlled substance with intent to deliver and sentenced to 15 years in the Illinois Department of Corrections. In reviewing Fisher's petition, the court summarizes the facts as described by the Illinois Appellate Court, which are presumed correct on habeas review. See Sumner v. Mata, 449 U.S. 539, 544-46 (1981); 28 U.S.C. § 2254(e)(1); see also Rodriguez v. Peters, 63 F.3d 546, 554 (7th Cir. 1995) ("Factual findings that have been decided by the state trial or appellate courts are presumptively correct.") (quoting Montgomery v. Greer, 956 F.2d 677, 680 (7th Cir. 1992)).

1

17

At Fisher's trial, Chicago police officer Eugene Bikullius testified to the following course of events. On June 20, 1996, he saw Fisher get out of a parked car and walk toward a residence at 4041 West Gladys. Bikullius observed Fisher holding a brown paper bag in one hand and a plastic bag with red markings in the other. Fisher put the plastic bag into the paper bag and handed it to a person standing on the front porch. The individual looked into the bag and then handed it back to Fisher. As Bikullius approached, Fisher again tried to give the paper bag to the other individual, who refused to take it. Fisher then looked over his shoulder toward Bikullius and dropped the bag to the ground. The Officer retrieved the bag and observed inside several packets of what was later determined to be cocaine.

Fisher refuted Bikullius' testimony by testifying as follows. He was sitting on the front porch with his brother and cousin when they observed an unmarked police car slowly drive past a vacant lot which was located adjacent to the house. At the same time, he observed a man running through the vacant lot. The police car stopped in front of the house and one of the officers asked him to approach the car. After he refused, the officers then unsuccessfully made the same request of his brother. The officers then exited the car, searched him and his brother and asked them if they observed a man running through the vacant lot. While he was talking to the officers, another officer retrieved a brown paper bag from the vacant lot. The officers then looked inside the bag, and put him, his brother and his cousin in the police car. He denied ever possessing the paper bag.

On February 25, 1998, Fisher was found guilty and convicted of possession of a controlled substance with intent to deliver and sentenced to 15 years of imprisonment. On August 23, 1999, Fisher appealed to the Illinois Appellate Court, First Judicial District, who affirmed his conviction

and sentence. On February 2, 2000, the Illinois Supreme Court denied Fisher's *pro se* Petition for Leave to Appeal.

On September 23, 1999, Fisher filed a *pro se* petition for post-conviction relief, alleging that: (1) he was denied a fair trial as a result of the ineffective assistance of his trial counsel; (2) he was denied a fair trial when Chicago Police Officer, Eugene Bikullius, gave false and incredible testimony; and (3) his sentence was excessive. On October 5, 1999, the Circuit Court of Cook County denied Fisher's petition for post-conviction relief. Fisher acknowledges that he failed to timely appeal the order denying his petition for post-conviction relief. See Pet. for Writ of Habeas Corpus, at 3.

On January 22, 2001, Fisher filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 with this court. Fisher's petition has been briefed and is now before the court.[1]

## II. DISCUSSION

The court first discusses the general rules of federal habeas review, including procedural default, and then discusses each of Fisher's claims.

### A. Standard of Review

Fisher's case is governed by 28 U.S.C. § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act ("AEDPA"). Section 2254 sets a high hurdle for habeas relief. The statute states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

---

[1] On September 7, 2001, the court ordered Fisher to file his reply brief by October 5, 2001. See R.15. As of the date of this order, Fisher has not filed a reply brief with the court.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court recently examined § 2254(d)(1), and held that the "contrary to" clause and the "unreasonable application" clause encompass two types of error that will cause a writ to issue. See Williams v. Taylor, 529 U.S. 362, 377, 398-411 (2000). The "contrary to" clause describes a state court decision that is opposite to the law announced by the Supreme Court, or where the state court "confronts facts that are materially indistinguishable from . . . relevant Supreme Court precedent," and reaches a conclusion opposite to that of the Supreme Court. See id. at 404 (also describing "contrary to" as "diametrically different," "opposite in character or nature," or "mutually opposed"); see also Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (discussing Williams).

The "unreasonable application" clause of § 2254(d)(1) refers to cases where the state court unreasonably applies Supreme Court precedent to the facts of a particular case. See Williams 529 U.S. at 405-06 (discussing different scenarios of unreasonable application of facts, but ruling that "[f]or now it is sufficient to hold that when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause"); see also Boss 263 F.3d at 739. While federal courts have an independent duty to say what the law is, Williams, 529 U.S. at 407-09, an erroneous application of the law by a state court will not be grounds for relief unless the application was also unreasonable. See id.; Boss 263 F.3d at 739.

4

Whether the state court's decision was reasonable is an objective question that does not necessarily turn on the correctness of the state court's decision. See id. at 407-09 (holding that a federal habeas court should not issue a writ simply because it concludes that the state court erroneously applied federal law, rather, the application must also be unreasonable); cf. Schaff v. Snyder, 190 F.3d 513, 523 (7th Cir. 1999) (holding that a federal habeas court should uphold a state court ruling that is minimally consistent with the facts and circumstances of the case). It is only when the application is unreasonably erroneous that habeas relief may be granted. See Williams, 529 U.S. at 407-09.

Section 2254(d)(2) involves the state court's determination of the facts, which are presumed correct. See 28 U.S.C. 2254(e)(1); see also Rodriguez v. Peters, 63 F.3d 546, 554 (7th Cir. 1995) ("Factual findings that have been decided by the state trial or appellate courts are presumptively correct."). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B. Procedural default**

Section 2254 requires a habeas petitioner to exhaust the remedies available in state court prior to pursuing federal habeas relief. See 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842-43 (1999); see also Spreitzer v. Schomig, 219 F.3d 639, 644-45 (7th Cir. 2000) (discussing exhaustion of habeas claims). In other words, if relief is still available to a habeas petitioner in state court, a federal habeas court cannot rule on the petition.

In addition to exhausting the remedies available in state court, a habeas petitioner is procedurally barred from raising claims in a federal habeas court that he did not raise in the state court proceedings. See O'Sullivan, 526 U.S. at 848 (holding that a petitioner's failure to present three claims to the Illinois Supreme Court for discretionary review resulted in a procedural default

of those claims). Fair presentment of a constitutional claim requires a habeas petitioner to present both the operative facts and the controlling legal principles to the state court before bringing the claims to a federal habeas court. See Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir. 1999) (discussing exhaustion of claim) (citing Picard v. Connor, 404 U.S. 270, 277 (1971)). Thus, a habeas petitioner procedurally defaults, or waives, any claim raised for the first time in federal court.

Also, federal habeas courts cannot review claims that the state court has disposed of on state law grounds. See Lambrix v. Singletary, 520 U.S. 518, 523-24 (1997) (noting that where "the state law determination is sufficient to sustain the decree, any opinion . . . on the federal question would be purely advisory") (citing Herb v. Pitcairn, 324 U.S. 117, 125-26 (1945)). Put another way, federal habeas relief is not available if the state court decision rests on state law that "is independent of the federal question and adequate to support the judgment." See Coleman v. Thompson, 501 U.S. 722, 729 (1991).

Waiver under state law is an independent and adequate state law ground for dismissal that can preclude federal habeas relief. Thus, when a state court determines that a habeas petitioner waives a claim in state court, that waiver is an independent and adequate state law determination that bars federal habeas relief. See Harris v. Reed, 489 U.S. 255, 258 (1989) (citing Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977)); see also Patrasso v. Nelson, 121 F.3d 297, 301-02 (7th Cir. 1997) (comparing waiver and res judicata under Illinois law, and the consequences of each on subsequent federal habeas review). But, for waiver to bar federal habeas review, the last state court to consider the question must have "actually relied on procedural default as the basis for its decision." Braun v. Powell, 227 F.3d 908, 912 (7th Cir. 2000). If that is not so, the merits of the issue are preserved for federal habeas review. See id.

Recently, the Seventh Circuit addressed the effect on federal habeas review of a state court granting a Finley motion. See Wilkinson v. Cowan, 231 F.3d 347, 350-51 (7th Cir. 2000). Pennsylvania v. Finley, allows appointed counsel to withdraw from an appeal of state post-conviction proceedings when counsel has reviewed the record and found no issues of merit. See, e.g., Wilkinson, 231 F.3d at 350-51. It is not unusual for an Illinois Appellate Court to grant a Finley motion, and in so doing, write that it has carefully reviewed the record and has found no arguable issue of merit. Wilkinson holds that such a disposition is a decision on the merits, rather than a decision based on a procedural default. See Wilkinson, 231 F.3d at 350-52. Thus, a petitioner in that situation has preserved for federal habeas review the merits of all claims presented in the post-conviction petition. See id.; Braun, 227 F.3d at 912.

Federal courts may review defaulted claims only if: (1) the petitioner shows cause for failure to raise the claim, and actual prejudice resulting therefrom; or (2) refusal to consider the defaulted claim would result in a fundamental miscarriage of justice, where a Constitutional violation has resulted in the conviction of one who is actually innocent. See Edwards v. Carpenter, 529 U.S. 446, 450-52 (2000); Spreitzer, 219 F.3d at 647-48; Rodriguez v. Scillia, 193 F.3d at 917. With these principles in mind, the court addresses Fisher's petition.

**C. Fisher's Claims**

In his petition, Fisher claims that: (1) he was denied the right to a fair trial as a result of the ineffective assistance of counsel, who failed to file a motion to suppress evidence based on an unlawful search and failed to produce a lab test of any fingerprints found on the paper bag seen in his possession; (2) he was the subject of a warrantless search, without probable cause, resulting in an illegal arrest; (3) he was denied a fair trial when the court denied him the opportunity to notice

7

his defense witnesses for trial; and (4) he was denied a fair trial when the court denied his motion for a continuance. See Pet. for Writ of Habeas Corpus, at 5-6. The court will now address each of Fisher's claims.

**1. Ineffective Assistance of Counsel**

Fisher asserts that he was denied the right to a fair trial as a result of the ineffective assistance of his trial counsel. This claim is governed by the familiar standards of Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). Fisher must first demonstrate that counsel's performance was deficient, meaning that it fell below objective standards for reasonably effective representation. See id. at 687-88. The court reviews counsel's performance deferentially, particularly counsel's choice of strategies. See Drake v. Clark, 14 F.3d 351, 355-57 (7th Cir. 1994). The court presumes that counsel's performance "falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see also Drake, 14 F.3d at 355-57. Accordingly, a habeas petitioner bears a heavy burden in demonstrating that counsel's performance was deficient to the point of offending the Constitution. See Drake, 14 F.3d at 355-57; compare Brown v. Sternes, 304 F.3d 677, 691-99 (7th Cir. 2002) (granting habeas relief due to ineffectiveness assistance of counsel). Then, Fisher has to show that the deficient performance prejudiced the proceedings, meaning that but for the deficient representation, there is a reasonable probability that the result of the proceedings would have been different. See id. at 694; see also Morris v. United States, 264 F.3d 726, 727 (7th Cir. 2001) (noting that Strickland prejudice is shown if the court's confidence in the outcome is undermined).

In this case, Fisher asserts that he was denied the right to effective assistance of counsel in two respects. First, Fisher claims he was denied the effective assistance of counsel when his trial

8

attorney failed to file a motion to suppress evidence due to an unlawful search. Second, Fisher argues that his counsel was ineffective by failing to produce a lab test concerning fingerprints found on the paper bag seen in his possession. The court will analyze each of Fisher's ineffective assistance of counsel claims below.

### a. Motion to Suppress Evidence Based on Unlawful Search

Fisher raised this issue on direct appeal to the Illinois Appellate Court. In addressing the claim, the Illinois Appellate Court, First Judicial District, determined that a sound trial strategy existed to support trial counsel's decision to forgo filing a motion to suppress – namely that of avoiding the possibility of Fisher's impeachment at trial. See R.12, Ex. A, at 3-4. As such, the court concluded that Fisher failed to meet the first prong under Strickland, that being that his counsel's performance fell below an objective standard of reasonableness. Id. at 4-5. The Illinois Appellate Court further noted that even if Fisher had met the first prong under Strickland, his appeal still failed because he failed to show, as required under the second prong of Strickland, that he was prejudiced by his attorney's conduct. Id. at 5. Thus, by finding that Fisher failed to meet either prong of the Strickland standard, the Illinois Appellate court denied Fisher's claim of ineffective assistance of counsel.

For Fisher to prevail on his claim under § 2254, he must show either that the decision of the Illinois Appellate Court: (1) was "contrary to" or involves an "unreasonable application" of clearly established Federal law; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d)(1) and (2). Fisher does not argue, nor does he provide any authority, to support his conclusion that the Illinois Appellate Court's decision met either of the criteria outlined in §§ 2254(d)(1) and (2). As such, his

attorney failed to file a motion to suppress evidence due to an unlawful search. Second, Fisher argues that his counsel was ineffective by failing to produce a lab test concerning fingerprints found on the paper bag seen in his possession. The court will analyze each of Fisher's ineffective assistance of counsel claims below.

### a. Motion to Suppress Evidence Based on Unlawful Search

Fisher raised this issue on direct appeal to the Illinois Appellate Court. In addressing the claim, the Illinois Appellate Court, First Judicial District, determined that a sound trial strategy existed to support trial counsel's decision to forgo filing a motion to suppress – namely that of avoiding the possibility of Fisher's impeachment at trial. See R.12, Ex. A, at 3-4. As such, the court concluded that Fisher failed to meet the first prong under Strickland, that being that his counsel's performance fell below an objective standard of reasonableness. Id. at 4-5. The Illinois Appellate Court further noted that even if Fisher had met the first prong under Strickland, his appeal still failed because he failed to show, as required under the second prong of Strickland, that he was prejudiced by his attorney's conduct. Id. at 5. Thus, by finding that Fisher failed to meet either prong of the Strickland standard, the Illinois Appellate court denied Fisher's claim of ineffective assistance of counsel.

For Fisher to prevail on his claim under § 2254, he must show either that the decision of the Illinois Appellate Court: (1) was "contrary to" or involves an "unreasonable application" of clearly established Federal law; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d)(1) and (2). Fisher does not argue, nor does he provide any authority, to support his conclusion that the Illinois Appellate Court's decision met either of the criteria outlined in §§ 2254(d)(1) and (2). As such, his

argument is waived. See United States v. Jones, 224 F.3d 621, 626 (7th Cir. 2000) (stating that the lack of development of an argument and the "absence of supporting case law 'speaks to the paucity of the argument.'") (citing United States v. Watson, 189 F.3d 496, 500 (7th Cir. 1999)).

Furthermore, the court does not find any indication of "clear error" in the Illinois Appellate Court's application of the Strickland standard. Absent such an indication, the court must give some deference to the Illinois Appellate Court's decision on the issue. See Ouska v. Cahill-Masching, 246 F.3d 1036, 1054 (7th Cir. 2001); see also Ashford v. Gilmore, 167 F.3d 1130, 1134 (7th Cir. 1999). In doing so, the court concludes that Fisher's claim that he was denied effective assistance of counsel when his trial attorney failed to file a motion to suppress evidence based on an unlawful search must be denied.

### b. Failure to Produce Fingerprint Lab Tests

Fisher also argues that his counsel was ineffective by failing to produce a lab test concerning fingerprints found on the paper bag seen in his possession. See Pet. for Writ of Habeas Corpus, at 5. Specifically, Fisher argues that trial counsel's failure to produce ". . . B of I fingerprint report to corroborate defendant's intended defense / he never had possession of plastic and brown bag . . ." resulted in Defendant's conviction based solely on his credibility, thereby prejudicing his defense and resulting in his unjust incarceration. See id. Fisher did not raise this claim in the state court proceedings. By raising the claim for the first time in this court, Fisher has procedurally defaulted the claim unless: (1) he shows cause for failure to raise the claim, and actual prejudice resulting therefrom; or (2) refusal to consider the defaulted claim would result in a fundamental miscarriage of justice, where a Constitutional violation has resulted in the conviction of one who is actually

innocent. See Edwards, 529 U.S. at 450-52; Spreitzer, 219 F.3d at 647-48; Rodriguez, 193 F.3d at 917.

Fisher does not attempt to establish cause and prejudice for failing to raise this claim in the state court. Therefore, the court is prohibited from considering the merits of Fisher's claim unless he can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice. See Edwards, 529 U.S. at 451; see also Howard v. O'Sullivan, 185 F.3d 721, 726 (7th Cir. 1999).

Fisher asserts that his trial attorney's failure to produce B of I fingerprint reports at trial resulted in Constitutional violations prohibiting him "... from putting forth best defense possible." See Pet. for Writ of Habeas Corpus, at 5. Fisher fails to meet his burden because he does not explain, nor does the record show, whether this test was ever conducted or what results may have arisen therefrom. Nevertheless, even if the court were to assume that fingerprint test was conducted and the results were favorable to Fisher, such a finding does not persuade the court that Fisher is actually an innocent man who has been wrongly convicted. See Gomez v Jaimet, 350 F.3d 673, 679 (7th Cir. 2003) (stating that "[t]he fundamental-miscarriage-of-justice exception applies only in the 'extremely rare' and 'extraordinary case' where the petitioner is actually innocent . . . .") (quoting Schlup v. Delo, 513 U.S. 298 (1995)); see also Howard, 185 F.3d at 726. Fisher was convicted at trial based on Officer Bikullius' testimony indicating that he observed Fisher in possession of the drugs despite Fisher's own testimony to the contrary. The absence of Fisher's fingerprints on either the paper or plastic bags, even when considered in light of Fisher's testimony, is not conclusive evidence of Fisher's innocence. Although such evidence would have corroborated Fisher's theory of defense, it is not enough to show that Fisher was wrongly convicted or in fact denied meaningful

representation at trial. See Rodriguez, 193 F.3d at 917 (stating that the fundamental miscarriage of justice "standard requires a petitioner to show that it is more likely than not that no reasonable juror would have convicted him."). As such, the court risks no fundamental miscarriage of justice by insisting that Fisher should have presented this claim to the state courts before pursuing them here.

**2. Search in Violation of Fourth Amendment**

Fisher next claims that he was the subject of a warrantless search, without probable cause, which resulted in an illegal arrest. See Pet. for Writ of Habeas Corpus, at 5. When analyzing a habeas petition under § 2254, Fourth Amendment claims are subject to the requirements set forth in Stone v. Powell, 428 U.S. 465 (1976). In Stone, the Court held that "where the State has provided an opportunity for the full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494. A petitioner has had a "full and fair opportunity" to litigate his claim if: (1) he has clearly informed the state court of the factual basis for that claim and has argued that those facts constitute a violation of his Fourth Amendment rights; (2) the state court has carefully and thoroughly analyzed the facts; and (3) the state court applied the proper constitutional case law to the facts. See Pierson v. O'Leary, 959 F.2d 1385, 1391 (7th Cir. 1992). The Seventh Circuit recently clarified this definition set forth in Pierson, emphasizing that the district court's determination of a full and fair opportunity to litigate a Fourth Amendment claim should not focus on the correctness of the state court's decision, but rather on the mechanism under which the state court has provided to the petitioner to litigate his claim. See Cabrera v. Hinsley, 324 F.3d 527, 531 (7th Cir. 2003) (providing that Stone would not block habeas review of petitioner's Fourth Amendment claim unless the state court's review mechanism was "in

12

some way a sham"). Simply put, "full and fair" guarantees the petitioner's right to present his Fourth Amendment claim, but it does not guarantee a correct result. Id.

In this case, although Fisher did not have a suppression hearing challenging the search that led to his arrest, he did have a full and fair opportunity to present his claim to the state court. On direct appeal to the Illinois Appellate Court, Fisher, through counsel, extensively argued the factual and legal basis for his Fourth Amendment claim when he presented an analysis of his ineffective assistance of counsel claim for failing to file a motion to suppress evidence that was wrongfully seized. See R.12, Ex. B, at 9-12. While addressing the second prong under Strickland, the Illinois Appellate Court carefully and thoroughly analyzed the facts and applied the appropriate constitutional case law, holding that given the evidence before it, the paper bag's contents would not have been excluded as illegally obtained evidence under the Fourth Amendment. See R.12, Ex. A, 4-5. Given this result, Fisher's Fourth Amendment claim is non-cognizable under § 2254. See Stone, 428 U.S. at 494; see also Cabrera, 324 F.3d at 531.

### 3. Denial of Fair Trial

Finally, Fisher claims that he was denied a fair trial when the trial court: (1) denied him an opportunity to notice his defense witnesses for trial; and (2) denied his motion for a continuance to obtain material eyewitness testimony. See Pet. for Writ of Habeas Corpus, at 6. Fisher failed to raise either of these claims in the state court. Thus, by raising the claims for the first time in this court, Fisher has procedurally defaulted them unless: (1) he shows cause for failure to raise the claims, and actual prejudice resulting therefrom; or (2) refusal to consider the defaulted claims would result in a fundamental miscarriage of justice, where a Constitutional violation has resulted in the

13

conviction of one who is actually innocent. See Edwards, 529 U.S. at 450-52; Spreitzer, 219 F.3d at 647-48; Rodriguez, 193 F.3d at 917.

Fisher does not attempt to establish cause and prejudice for failing to raise these claims in the state court. Therefore, the court is prohibited from considering the merits of Fisher's claims unless he can demonstrate a sufficient probability that our failure to review his federal claims will result in a fundamental miscarriage of justice. See Edwards, 529 U.S. at 451; see also Howard, 185 F.3d at 726. In regard to these claims, Fisher offers no evidence to persuade the court that he is actually an innocent man who has been wrongly convicted. See Gomez, 350 F.3d at 679; see also Howard, 185 F.3d at 726. Nor does Fisher proffer what these witnesses would have said had they testified at trial. Absent such a proffer, the court risks no fundamental miscarriage of justice by insisting that Fisher should have presented these claims to the state courts before pursuing them here. See Rodriguez, 193 F.3d at 917 (stating that the fundamental miscarriage of justice "standard requires a petitioner to show that it is more likely than not that no reasonable juror would have convicted him.").

## III. CONCLUSION

For the foregoing reasons, Fisher's Petition for Writ of Habeas Corpus brought pursuant to 28 U.S.C. § 2254 is denied.

IT IS SO ORDERED.　　　　　　　　　　　　　ENTER:

　　　　　　　　　　　　　　　　　　　　　　　　　　Charles R. Norgle, Judge
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Court

DATED: 1-9-04